Good morning, Your Honor. Franklin Ferguson on behalf of the appellant, Mr. Myung Kang. Critical to this case is the fact that we're looking at a motion for summary judgment. And the appellant believes that this case should result in a reversal for two reasons. First, number one, the plaintiff was able to establish a prima facie case based upon direct evidence of discrimination. Why don't you keep your voice up just a little bit? The plaintiff was able to establish the prima facie case on direct evidence of discrimination based upon a decision maker, Bob Herber, and his racial epithets cast in the direction of Mr. Kang. And number two, circumstantial evidence was established by the plaintiff in the motion of summary judgment opposition, whereby the plaintiff was able to show that he was similarly situated to Mr. Lira, and that, in fact, Mr. Lira was treated more favorably than he. Relative to Mr. Herber's role in this case, it's critical to note that Mr. Herber, at the outset, admits in his testimony that he was aware of the fact that Mr. Kang was ridiculed, was cast into derision by his coworkers and by all supervisors, and Mr. Kang has witnessed evidence that Mr. Herber himself also participated by calling him directly, quote-unquote, stupid Korean on many occasions. Calling what? Calling Mr. Kang a stupid Korean on numerous occasions. In the district court, the court made a determination in their opinion concerning the fact that, or concerning the conclusion that Mr. Herber never made the statement about Mr. Kang. And by doing that, the court took a side. The court weighed the evidence and took the side in favor of the moving party, when, in fact, the court was supposed to make a determination. Was there a tribal issue of fact? And clearly, based on the evidence that was presented, there was in this case. I'd like to point out again Mr. Herber's responsibilities in this case. Besides his direct evidence of discrimination, Mr. Herber took every opportunity to depart from P.B. Fashioner's own policies when it came down to the decision concerning Mr. Kang. First, relative to the decision to demote Mr. Kang, Mr. Herber was the integral player in making the determination. Mr. Herber made all the decisions, right? He made all the decisions, Your Honor. But didn't your client admit in his deposition that Mr. Herber did not call him a stupid Korean? Your Honor, we addressed this issue in the reply brief, and the issue is this. If you look at the record, there is about a 40-page distinction in the deposition. Essentially, at page 92, Mr. Kang suggests that he did not say stupid Korean in one instance, one instance relative to describing Mr. Herber's behavior. But he said earlier in the deposition, page 50, that he had been referred to, he referenced Mr. Kang as a stupid Korean on many occasions in 2001, 2002, and 2000. So we have an example from Mr. Kang, not refuted, excuse me, refuted by Mr. Herber, but we have a controversy of the testimony here, which was a prima facie case of direct evidence and should have resulted in a trial fact being able to hear this case. With respect to the unbehavior of Mr. Herber relative to the decision to demote Mr. Kang, it was made in a fashion that was against the company's policy. The night shift manager, Ill Kill, testified that he was not aware of the decision until after it had occurred. There was also the departure from policy in that Mr. Herber made his own criteria. He said that he believed that the reason for the transfer to the night shift was because Mr. Kill would be able to assist Mr. Herber in interpretation issues. Well, that's belied by the fact that Mr. Herber never spoke with Mr. Kill before the transfer. It's belied by the fact that Mr. Herber also did not even discuss with Mr. Kill the employee transfer form, which was a required form for this process. Belied by the fact that Mr. Kill had no expertise in the NDT process, which Mr. Kill was going to be engaged in, and belied by the fact that Mr. Kang's responsibilities did not require language interpretation by Mr. Kill or anyone else. What were his precise responsibilities? Yes, Your Honor, Mr. Kang was responsible for manufacturing parts and making sure that they were tested and they could meet certain criteria, certain standards of the industry. That was it. And Mr. Herber admitted in his testimony. So where did the language skills come into it? They did not. Mr. Herber admits that nowhere in the policy of the company, nowhere in any employee review, nowhere in any type of criteria that was utilized by the company to make determinations as to performance of Mr. Kang, was English proficiency an issue. Mr. Herber made a subjective determination that he believed that English proficiency was going to be an issue. And again, talking with Mr. Kill prior to the transfer would have been integral if you wanted Mr. Kill to translate for Mr. Kang, but there were no issues for Mr. Kang to be translated for in the first place. Okay. So the district court said this transfer to the night shift was not an adverse employment action because he was not actually demoted. He retained his same level. What's your response to that? Yes, Your Honor. The transfer to the night shift traditionally under the company's policies, practices and policies, came with a raise, a 75-cent raise. Mr. Kang, however, got a 30-cent raise, number one. Number two, Mr. Kang had been on the day shift for 27 years, and the move to the night shift was a drastic change in his schedule. It was also associated by Mr. Kang with the reality that when people are transferred to the night shift, especially when they're transferred for no apparent reason, they are ultimately terminated. And that was consistent from Mr. Kang's experience, and that borne out in this case as well. Do you want to save some time for rebuttal? I do, Your Honor. Okay. Well, let's hear what the other side has to say. Good morning, Your Honor. My name is Eric Daugherty. I represent PB Fasteners, and may it please the Court, I would like to respond to the points made by Mr. Ferguson in his opening argument. We believe that the district court did properly analyze this case, both under McDonough Douglas and under the more open means of developing and showing prima facie evidence and pretext. Her opinion, I think, speaks for itself. In terms of what Mr. Ferguson says he proved with regard to the prima facie evidence, he notes Herber's racial epithets. As the Court has noted, there is a dispute about how he retracted it. But the fact of the matter is, when you read the deposition testimony of Mr. Kang, and there is a gap there, I think it becomes quite clear that when Mr. Kang first said something about Herber, as someone who made a racial epithet, it was in the context of listing a lot of people. And the exchange is somewhat confusing. But later, when the question was focused on what Mr. Kang or what Mr. Herber, who was a supervisor and he was a decision maker, we're not disputing that, what Mr. Herber actually said, Mr. Kang specifically, and in a very focused way, said, he never called me stupid Korean. He said, you don't know how to do your job after all these years. He was actually, obviously, upset with Mr. Kang about something that had happened. But, of course, Mr. Kang had been employed there for 30 years. So the fact of the matter is, we believe that what Mr. Herber... Do you think that was a question of fact, whether he really said it or not? Here's why I say no, Your Honor, because he specifically says it didn't happen. What the plaintiff is now trying to say is, well, obviously, there's confusion. He did, he didn't. But the confusion we submit is created by the failure of plaintiff to clarify that remark, either through his counselor or in some other way, to come back at the deposition where it could have been easily determined if, indeed, he did say Herber said stupid Korean. It could have been cleared up. And to now say that because there's an admittedly somewhat confused record, that that's a genuine issue of disputed fact, I think is not correct. And I think that the district court was correct in analyzing both sides of that issue and finding that the specific contradictory testimony by the plaintiff himself that Mr. Herber never said stupid Korean is the correct one. And I think should be followed by this court. With regard to the circumstantial evidence of similarly situated, it was analyzed in that way. And we simply submit, as the district court found, that Mr. Lira was a lead person and he was a supervisor. And the case authority, I think, is pretty clear, Vasquez comes to mind right now, that supervisors are not similarly situated. And notwithstanding all of the dust that's created about when Mr. Kang had the job and lost the job and what his duties were, Mr. Kang again, under oath, specifically says Lira was my supervisor. He categorizes Lira. He puts Lira in that position. And under the law, I think that the company was correct in analyzing who should be terminated finding that Lira, as a lead man, should stay. And the other two, one of whom was not in Mr. Kang's protected class, that is a Hispanic, Mexican-American gentleman, both were let go. And I think that's telling evidence. And I think the cases tell us that when you have that kind of situation, it undercuts the pretext argument that a plaintiff can make. With regard to the racial hostility atmosphere that Mr. Ferguson notes and Mr. Herber's possible role in that, the evidence was pretty clear and really undisputed that to the extent Mr. Herber had any knowledge, it was before he became a decision maker. He wasn't even in that department. But more importantly, and there are many, many allegations about this, about name-calling and a racially hostile atmosphere. That's not a claim here. And it never has been a claim in this case. And we believe that the district court properly did not consider that kind of evidence because this is a wrongful termination case. And as such, should be focused upon with that discriminatory sort of nexus in mind. That is, nothing having to do with a claim that wasn't brought of racial hostility has anything to do, especially by non-decision makers, has anything to do with the fact that Mr. Kang was later let go as part of a reduction in force. We've gone over the brief. We've got yours. Okay. I have nothing else to add. So I'll submit it. Thank you very much. Thank you, Your Honor. First, as to Mr. Herber's knowledge, the allegation from Mr. Kang was that direct evidence of discrimination occurred in 2000, 2001, 2002. Six months prior to Mr. Herber making the determination that Mr. Kang was to be demoted and then terminated. Secondly, as to the similar situated argument, we have Mr. Lira was in name a lead worker. Mr. Kang had served as a lead worker for 20 years until 1995. From 1995 until his termination, Mr. Kang was the de facto lead worker in Mr. Lira's presence. As a matter of fact, at no point in time did Mr. Lira ever perform an audit independently. In other words, he was not proficient enough in the responsibilities of the department to be able to manage the test for the parts without Mr. Kang's assistance. And in fact, Mr. Lira used that quote-unquote title to make sure that Mr. Kang was the person who engaged in the testing  The sole distinction between Mr. Lira's title as lead worker and Mr. Kang as level two worker was the quote-unquote first level supervisor responsibilities. But in fact, the actual reality was that Mr. Kang served as the actual expert, the person who trained the employees in the department, the person who did the testing in the department, the person who did the work. If a defendant can come and say they're not similarly situated because we call this person lead worker but he doesn't do the responsibilities, then no one would be able to defeat this argument. And more important, the cases in the United States say not that the employees have to be in the exact same position, but rather they're similarly situated in the more relevant aspects of the job. In the relevant aspects of this job, Mr. Kang was the one who actually served as a lead worker and Mr. Lira acknowledged it as much by deferring Mr. Kang to the testing, by having Mr. Kang engage in the actual training of the new employees, and by leaning on Mr. Kang's experience. Mr. Kang had 20 years more experience than Mr. Lira. At all times, Mr. Kang was the expert in the department. At no time was English proficiency a part of the job. When it came down to the time for the demotion, Mr. Lira acknowledges in his deposition that yes, he signed the transfer form, but he didn't know what he was signing. Mr. Herber, Mr. Herber orchestrated the whole thing by having Mr. Lira sign the document and later saying, well, it's been signed by Mr. Lira. Mr. Herber did not have Mr. Kilher sign the same document either for the transfer or for the termination. When it comes down to the last point I want to make, relative to the district court, the district court rejected the plaintiff's evidence of direct discrimination. The district court made a value judgment. It weighed the credibility and said it didn't happen. The district court made a fundamental error in the motion of the summary judgment, which is to weigh the evidence and come out in favor of the moving party. Here, we have a situation where the district court was supposed to simply say, you know what, here is a copy of evidence, the proper tribunal for this prior fact. At that point in time, we should have been entitled to a trial and it did not occur. Thank you for your time.
judges: Pregerson, Wardlaw, Archer